**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

STARLA JEAN BROWN,          )
                                   )
               Plaintiff,     )
                                   )
                                   )  Case No. CIV-19-095-KEW
                                   )
COMMISSIONER OF THE SOCIAL   )
SECURITY ADMINISTRATION,     )
                                   )
               Defendant.    )

## OPINION AND ORDER

Plaintiff Starla Jean Brown (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that she was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of

such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States

---

[1]     Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 54 years old at the time of the ALJ's decision. She has a high school education and worked in the past as a billing clerk. Claimant alleges an inability to work beginning on March 1, 2014, due to limitations resulting from persistent headaches with vomiting and weakness, general muscle weakness, problems with balance resulting in falls, depression, and complications from methicillin-resistant staphylococcus aureus (MRSA).

## Procedural History

On November 4, 2016, Claimant protectively filed an application for a period of disability and disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social

Security Act. Claimant's application was denied initially and upon reconsideration. On January 23, 2018, ALJ Ralph F. Shilling conducted a video hearing from Dallas, Texas. Claimant participated from Paris, Texas. On April 12, 2018, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on January 19, 2019, it denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with additional limitations.

## Errors Alleged for Review

Claimant asserts the ALJ committed error for: 1) failing to properly assess medical source opinions; 2) failing to properly assess the consistency of Claimant's complaints with the evidence of record; and 3) failing to perform a proper step-five evaluation.

## Evaluation of Opinion Evidence

In his decision, the ALJ found Claimant suffered from severe impairments of status post-hernia repair, MRSA complications, headaches, obesity, and depression. (Tr. 48). He determined

4

Claimant could perform light work with additional limitations. In so doing, the ALJ found Claimant could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk, in combination, for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. Claimant could not crawl or climb, or use ladders, ropes, or scaffolds. She could occasionally balance, stoop, bend, squat, kneel, or crouch. Claimant was to avoid hazards, hazardous machinery, extreme heat and cold, dust, fumes, odors, and concentrated exposure to vibration. She retained the ability to understand, remember, and carry out short and simple tasks and instructions, and work activity should be routine and repetitive. Claimant retained the ability to ask simple questions and request assistance. She could occasionally appropriately interact with supervisors, co-workers, and the public. (Tr. 53-54).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of copy clerk, mailroom clerk, and food inspector, all of which he found existed in sufficient numbers in the national economy. (Tr. 59). As a result, the ALJ concluded Claimant was not under a disability from March 1, 2014, through the date of the decision. *Id*.

Claimant contends the ALJ improperly considered the medical opinion evidence from her treating physician, Royce G. Martens, D.O. Treatment records show Dr. Martens provided treatment and

medication to Claimant over several years. (Tr. 1187-1277, 1340-54, 1364-85). On November 3, 2015, he completed an RFC capacity questionnaire regarding Claimant's physical impairments. He stated he began treating Claimant in 2009. He deemed Claimant's prognosis as fair, identified symptoms of pain, drowsiness, fatigue, and headaches, and indicated her impairments frequently were severe enough to interfere with the attention and concentration required to perform simple work-related tasks. Side effects from medication included drowsiness and muscle relaxants. Dr. Martens responded "yes" to the question that Claimant would need to recline or lie down during an eight-hour workday in excess of the typical 15-minute break in the morning, the 30-60 minute lunch, and the typical 15-minute break in the afternoon. He estimated Claimant could walk one city block without rest or significant pain, could sit for one hour at one time, could stand/walk for 15 minutes at one time, could sit for 7-8 hours total in an eight-hour workday, and could stand/walk for 1 hour total in an eight-hour workday. Claimant needed a job that would permit her to shift positions at will from sitting, standing, or walking. She would not need to take unscheduled breaks during the workday. Claimant could frequently lift and/or carry ten pounds or less than ten pounds, occasionally lift and/or carry twenty pounds, but she could never lift and/or carry fifty pounds. She had limitations with repetitive reaching, handling, and fingering, including only being able to

6

use her hands to grasp, turn, or twist objects 20 percent of the time with her right hand and 30 percent with her left hand, only being able to use her fingers for fine manipulation 30 percent of the time with her right fingers and 35 percent with her left fingers, and only being able to use her arms for reaching 30 percent of the time with her right arm and 25 percent with her left arm. Dr. Martens estimated Claimant would be absent from work once or twice a month as a result of her impairments or treatments. He indicated Claimant was not a malingerer and it would depend on the job whether she was physically capable of working an eight-hour day for five days a week. (Tr. 1266-67).

On the same date, Dr. Martens completed a mental capacity assessment for Claimant. He found she had a moderate limitation (defined as intermittent difficulty performing in an area, but individual can generally perform satisfactorily but not always) in the areas of understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances, completing a normal workday without interruptions from psychologically based symptoms, performing at a consistent pace with a standard number and length of rest periods, and accepting instructions and responding appropriately to criticism from supervisors. He also determined Claimant had a

marked limitation (defined as a serious limitation in area, and individual generally cannot perform satisfactorily in the area) in the area of setting realistic goals or making plans independently of others. Dr. Martens estimated Claimant likely would have two absences in an average month. She could manage her own benefits. (Tr. 1268-70).

The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). He must provide specific, legitimate reasons for rejecting any such opinion, and also must give consideration to several factors in weighing a medical opinion. *Id*. Moreover, "an ALJ must give good reasons for the weight assigned to a treating physician's opinion, that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). "As long as the ALJ provides 'good reasons in his decision for the weight he gave to the . . . opinion[], [n]othing more [is] required[.]'" *Mounts v. Astrue*, 479 F. App'x 860, 865 (10th Cir. 2012), quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

The ALJ briefly referenced Dr. Martens' treatment records by exhibit when determining which of Claimant's medically determinable impairments were severe. (Tr. 48-50). Although

initially stating in his decision that there was no opinion from a treating source, later in his decision, the ALJ referenced Dr. Martens as Claimant's treating physician and discussed some of his findings from the physical RFC questionnaire. The ALJ noted Dr. Martens found Claimant could sit up to eight hours in a workday and stand/walk up to one hour in a workday. She could occasionally lift up to twenty pounds, but never up to fifty pounds. The ALJ mentioned Dr. Martens' opinion Claimant could be expected to be absent one or two times per month.

The ALJ also referenced Dr. Martens' completion of a mental RFC assessment, noting Dr. Martens found Claimant had a marked limitation in her ability to set goals or make plans, but she would have no more than moderate restrictions in all the other areas of mental functioning. He then stated that "I find Dr. Martens' opinion generally, but not wholly, consistent with the longitudinal record." Specific to the mental evaluation, he noted "[C]laimant's minimal psychiatric treatment and the fact that this is not Dr. Martens' specialty area." The ALJ then determined "I assign his opinion no more than partial weight. I have accommodated the [C]laimant's condition by limiting her to light work activity with additional mental restrictions." (Tr. 57).

Regarding the opinions expressed by Dr. Martens on the physical and mental RFC questionnaire, the ALJ noted Dr. Martens' opinions were "generally, but not wholly, consistent with the

longitudinal record." He further discounted his mental opinions because the opinions were outside Dr. Martens' area of specialty. He then assigned "partial" weight to Dr. Martens' opinions. This Court finds no error regarding the ALJ's treatment of Dr. Martens' mental opinions, as the ALJ provided a "good reason" for assigning only partial weight to the opinions.

However, by assigning "partial" weight to his opinions regarding Claimant's physical limitations, the ALJ's analysis is not specific enough for the Court to determine which portions of Dr. Martens' opinions were given some weight and which portions were given little if any weight. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (finding an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability"). Although some of Dr. Martens' opinions are consistent with the ALJ's RFC, several of his limitations are not even mentioned in the ALJ's decision, *e.g.*, limitations on Claimant's use of her hands, arms, and fingers, Claimant's need to recline or lie down during the workday, and her need to shift between positions during the workday. Here, although it appears the ALJ rejected certain of Dr. Martens' opinions outright, the Court will not make this determination for the ALJ. *See Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004) ("Affirming this post hoc effort to salvage the ALJ's decision would require us to overstep our institutional

10

role and usurp essential functions committed in the first instance to the administrative process.").

Although the Commissioner is correct that an ALJ is not required to conduct a factor-by-factor analysis of a treating physician's opinion, an ALJ is required to provide "'good reasons in his decision for the weight he gave to the . . . opinion[.]'" *Mounts*, 479 F. App'x at 865, quoting *Oldham v. Astrue*, 509 F.3d at 1258. On remand, the ALJ should re-evaluate Dr. Martens' opinions and specifically set forth those portions that are given weight and those portions that are not supported. Because the ALJ's re-evaluation of Dr. Martens' opinions may result in further limitations in the RFC, the ALJ should reassess his findings at steps four and five of the sequential process if necessary.

### Evaluation of Complaints and Symptoms

Claimant also asserts the ALJ failed to properly evaluate the consistency of her complaints when determining the RFC. However, because the ALJ must re-evaluate Dr. Martens' opinion, and this may result in changes to the RFC, the Court declines to address the ALJ's evaluation of Claimant's complaints and symptoms at this time. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the [symptom] evaluation is to help the ALJ access a claimant's RFC, the ALJ's [symptom evaluation] and RFC determinations are inherently intertwined.").

### Step Five Determination

Claimant further argues the ALJ erred in his step-five determination by relying on the wrong DOT number for the job of mailroom clerk, as provided by the VE, and then determining that there were a significant number of jobs in the national economy based upon the two remaining jobs from the VE. Again, however, because the Court has determined the ALJ must re-evaluate the opinions from Dr. Martens, and this may result in a different RFC, it is also possible the ALJ's step-five findings may change.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED** and the case is **REMANDED** for further proceedings consistent with the Opinion and Order.

IT IS SO ORDERED this 28th day of September, 2020.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE